### In the Matter of CENTURY GLOVE, INC., a Delaware corporation, Debtor.

### Bankruptcy No. 85–438.

United States Bankruptcy Court, D. Delaware.

June 19, 1987.

---

See also, 74 B.R. 958.

Eduard F. von Wettberg, III, Wilmington, Del., for debtor.

Peter J. Schmerge, New York, N.J., for BTNY.

James L. Patton, Jr., Wilmington, Del., for Unsecured Creditors Committee.

Peter J. Walsh, Edmond D. Johnson, Wilmington, Del., for FAB.

Francis J. Murphy, Wilmington, Del., for SWG.

HELEN S. BALICK, Bankruptcy Judge.

Century Glove, Inc., citing 11 U.S.C. § 1126(e) and BR 2019(b), has moved to invalidate the votes of three creditors who rejected Century's proposed plan. It contends that First American Bank of New York (FAB) acted in bad faith in soliciting and procuring the rejections of SWG Acquisition Corporation (SWG), Bankers Trust New York Corporation (BTNY), and Latham Four Partnership (Latham Four); and, as a consequence, FAB's vote should be held invalid and FAB prohibited from being heard further in the bankruptcy case.

No live testimony was presented for or against these motions. The record consists of FAB's response to each motion; responses by SWG, BTNY, and Latham Four; John M. Bloxom, IV's deposition of March 28, 1987, and exhibits; David A. Ruffo's deposition of March 11, 1987, as corrected

and submitted as an exhibit to his affidavit, and exhibits; and an excerpt from the transcript of disclosure statement hearing of September 18, 1986, of statements made by Theodore Lindsay, attorney for BTNY. The response of BTNY includes affidavits of Anna E. Panayotou and James G. Hellmuth. The response of SWG includes affidavits of Cecil R. Miskin and Kent Millington. Latham Four's response includes the affidavit of David A. Ruffo.

In all four motions, Century recited the following allegations [1]:

During the period of time when [holders of claim or interest] were to consider the Plan and determine to accept or reject the Plan, FAB, by and through its attorneys, unlawfully solicited rejection of the Plan by [holder of claim or interest] and violated the Court's orders granting Century the exclusive right to file a plan of reorganization and solicit acceptances. In particular:

(a) FAB's attorneys sent copies of an FAB draft plan of reorganization to representatives of [holder of claim or interest];

(b) FAB's attorneys in effect urged such [holders or their representatives] to review the FAB draft plan of reorganization, compare it to Century's Plan and then reject the Plan;

(c) FAB's attorneys represented to such [holder or representative of holder of claim or interest] that the FAB draft plan of reorganization would be available if the Century Plan were rejected; and

(d) FAB's attorneys, in describing the FAB draft plan of reorganization and the Century Plan to such [holders or their representatives], misstated material facts and omitted to state material facts with the result that the descriptions were materially misleading and incomplete. For example, FAB's attorneys did not state who would manage Century and did not provide any business plan or financial information in connection with the FAB draft plan of reorganization.

FAB's actions with regard to all three creditors generally.

---

1. *See* ¶ 3 of Doc. Nos. 247, 248, 249, 250. Paragraph 3 *of the motion against FAB speaks to*

An additional allegation was included in the motions against Latham Four and FAB. That allegation charged that

(e) Without the knowledge or approval of the committee of creditors holding unsecured claims or of the committee's counsel, FAB's attorneys sent to a representative of [the holder of a claim] a copy of a letter from counsel for the committee to members of the committee dated August 26, 1986.

The record reflects that the allegations of improper solicitation of SWG, BTNY, and Latham Four by attorneys on behalf of FAB involve the written and verbal communications of one attorney of FAB, John M. Bloxom, IV, with the named creditors. (Bloxom Dep. 9–13).

Following a discussion of the general principles of law, the court will address seriatim the facts surrounding the solicitation of each creditor by FAB.

█ Any party in interest may solicit acceptances or rejections of a plan subject to certain limitations. Section 1125(b) of title 11 permits solicitation of acceptances or rejections of a plan after the commencement of a case only if, at the time of the solicitation or before, there is transmitted to the solicitee the plan or a summary of the plan, and a written disclosure statement approved by the court as containing adequate information from which, when taken together with the plan, any creditor can make an informed judgment as how to vote on the plan. Once a copy of the court approved disclosure statement and a plan are received by the solicitee, rejections and acceptances clearly may be solicited by any interested party. While § 1121(b) of the Code gives a debtor the exclusive right to file a plan within the first 120 days after the entry of an order for relief, it does not give a debtor the exclusive right to solicit acceptances. Any other interpretation would negate the provisions of § 1125(b) which state the requisites necessary to solicitation of acceptances *or rejections* (emphasis added). It is unlikely that the proponent of a plan is going to solicit rejections.

█ However, the solicitation, whether it be performed by the debtor or some other interested party, must be limited by the contents of the plan, the disclosure statement, and any other court-approved solicitation material. The solicitee may not be given information outside of these approved documents.

If information other than that contained in the court-approved documents is provided to the solicitee, the issue arises whether in addition to constituting a violation of § 1125(b), the act is sufficient to warrant designation of the solicitee and invalidation of its vote pursuant to § 1126(e), which provides:

[o]n request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

The equities of the factual situation here mandate that if a violation of the Bankruptcy Code provisions regarding solicitation is shown, the solicitee is to be designated and its vote invalidated unless that solicitee can show it did not rely on information provided to it via improper solicitation.

SWG

█ Bloxom communicated by telephone with Cecil R. Miskin, an attorney representing SWG. (Miskin Aff. ¶ 4; Bloxom Dep. 48). Miskin asked whether there was an alternative plan in the works (Miskin Aff. ¶ 5) and, upon his request, Bloxom sent to Miskin a copy of the FAB plan. (Miskin Aff. ¶ 7; Bloxom Dep. 49). According to Miskin, however, he never received or saw the FAB plan (Miskin Aff. ¶ 7, ¶ 8), nor did Bloxom discuss the FAB plan with him. (Miskin Aff. ¶ 6).

Kent Millington, President of SWG, stated in his affidavit that at no time prior to debtor's filing of these motions had he spoken to any attorney representing FAB. (Millington Aff. ¶ 5). He further stated that he never received a copy of the FAB plan (Millington Aff. ¶ 6), and he opposed the debtor's plan independent of any rea-

son or cause set forth by FAB. (Millington Aff. ¶ 9).

Based on these facts, SWG's vote will not be invalidated. According to statements made under oath which debtor failed to refute, neither counsel for SWG nor its president saw the FAB plan or discussed it with Bloxom. Therefore, Millington could not have relied upon it when casting SWG's vote. Although it was improper for Bloxom to send SWG's counsel a copy of the FAB plan, it would be unfair to penalize SWG when its representatives did not receive the plan or discuss it with anyone.

**BTNY**

■ Bloxom communicated with two individuals representing BTNY—James G. Hellmuth, Vice President of BTNY, and Anna E. Panayotou, member of the firm of Eaton and Van Winkle, attorneys for BTNY.

Bloxom's first communication with either of these representatives was a brief telephone conversation with Hellmuth in July or August of 1986. The substance of the conversation was Bloxom advising Hellmuth that BTNY was a creditor in the case and to inquire why he was keeping a low profile. Hellmuth responded that he was unaware of the case. (Bloxom Dep. 17–19).

On December 16, 1986, Bloxom spoke with Panayotou by telephone, which, according to Panayotou, was the first time she learned of the existence of the FAB plan. They had no discussion of the FAB plan, but she requested that Bloxom send her a copy of it. Panayotou advised Bloxom during that conversation that BTNY had made a preliminary decision to reject the debtor's plan in September 1986 and nothing occurred since that time to cause BTNY to alter its decision. (Panayotou Aff. ¶ 4).

In his affidavit, Hellmuth also stated that BTNY made a preliminary decision to reject the Century plan on September 12, 1986, that he authorized BTNY's attorneys to file an objection to the disclosure statement and to appear before the court at the disclosure statement hearing on September

18 [2], and that after reviewing the debtor's plan, amended disclosure statement, and other solicitation material received on December 15, 1986, nothing in the documents changed BTNY's earlier decision. (Hellmuth Aff. ¶ 2, ¶ 3, ¶ 4).

On December 17, 1986, Bloxom, Hellmuth, and Panayotou participated in a conference telephone conversation during which Hellmuth confirmed to Bloxom that BTNY would reject the Century plan. There was no discussion during the call of the FAB plan. BTNY executed its ballot on that same day. (Hellmuth Aff. ¶ 5, ¶ 6; Panayotou Aff. ¶ 5).

Panayotou received the FAB plan on December 18, 1986, but did not read it until after receipt of the papers concerning this motion in May 1987. (Panayotou Aff. ¶ 6). Hellmuth never received a copy of the FAB plan and does not recall being informed of its existence prior to May 1987. (Hellmuth Aff. ¶ 6).

Based on these facts, BTNY's vote also will not be invalidated. BTNY's representatives have demonstrated through their affidavits and Bloxom by his deposition that BTNY could not have relied on the FAB plan or any discussion with Bloxom regarding that plan in making its decision to reject the debtor's plan. Debtor has failed to refute these sworn statements. Again, it would be unjust to penalize BTNY for Bloxom's inappropriate solicitation when that solicitation did not affect BTNY's vote.

Latham Four Partnership

Bloxom communicated by telephone and letter with a member of the law firm representing Latham Four, David A. Ruffo, whose specific client Charles Touhey is the general and managing partner of Latham Four.

Bloxom initiated two telephone calls with Ruffo. The first call, made on December 12, 1986 after Ruffo had received the court-approved solicitation material, was for Bloxom to ascertain whether Latham Four had voted on the debtor's plan, to advise Ruffo of motions filed with the court by

---

**2.** The excerpt from disclosure statement hearing supports Hellmuth and Panayotou's statements.

FAB, and to suggest that Ruffo review the motions before advising his client on voting Latham Four's ballot. Bloxom agreed to send Ruffo copies of the motions. (Ruffo Aff. ¶ 17, ¶ 22; Ruffo Dep. 21–22).

According to Ruffo, he had already prepared ballots for his client both accepting and rejecting the plan and had asked him to sign whichever one he preferred. (Ruffo Dep. 20). Latham Four, however, had not cast its ballot. (Ruffo Dep. 20).

Bloxom mentioned the existence of the FAB plan during the first conversation with Ruffo and upon Ruffo's request sent a copy of the plan to him. (Bloxom Dep. 27–28; Ruffo Aff. ¶ 22). Ruffo read the FAB plan shortly after receiving it. (Ruffo Dep. 27–28).

Bloxom telephoned Ruffo again on December 29, 1986 to apologize for not having sent copies of the FAB motions as promised. (Ruffo Dep. 29). Ruffo eventually did receive copies of the motions FAB had filed with the court, including a letter from counsel for the creditors committee to the committee in which counsel stated his belief that the committee should reject the debtor's plan. (Ruffo Dep. 31).

In his deposition, Bloxom states that in one conversation with Ruffo he discussed generally the "thrust" of FAB's plan, telling Ruffo

> [t]hat it was substantially similar to the first amended plan, which hereafter I will refer to as "the debtor's plan," except that equity in the reorganized debtor would be distributed to creditors. And that there were provisions for certain manditory [sic] payments out of the future profits against the possibility that the lawsuits, as defined in the debtor's plan, produced no proceeds.
>
> \*    \*    \*    \*    \*    \*
>
> I told him that there was no alternative, but that in the event this plan, the debtor's plan, were not to obtain confirmation, assuming that parties in interest were thereafter allowed to propose plans of reorganization, then in that event, there could be alternatives. (Bloxom Dep. 29).

Ruffo stated that he concluded the "lawsuits" proposed under Century's plan lacked merit and his client would receive nothing under that plan independent of any conversation he had with Bloxom. (Ruffo Dep. 42, 47). It was Ruffo's understanding also that the FAB plan was sent to him solely for his comments relative to any changes he may consider appropriate. (Ruffo Dep. 52).

It remains undisputed, however, that Ruffo read and Touhey had in his possession both the Century plan and the FAB plan before casting Latham Four's vote. (Ruffo Dep. 27–28, 34). It is not known how Latham Four made its decision to reject the debtor's plan, and it has not been proven that Touhey, Ruffo, or both, did not rely on the FAB plan and discussions with Bloxom. In fact, Ruffo admits that one of the factors in his consideration was that the FAB plan offered more to his client than the debtor's plan. (Ruffo Dep. 66).

The solicitation of Latham Four was tainted by the FAB plan having been sent to and reviewed by Ruffo and given to Touhey. The impropriety is heightened by the advancement of a plan without the inclusion of information usually contained in a disclosure statement such as who will manage the debtor.

■ Furthermore, FAB's use of the letter directed to the creditors committee from its counsel was improper. FAB having received an unsolicited copy of that letter from another source was obviously wary about using it. From its machinations in securing a copy from a former member of the committee, it can be inferred that it thought the letter could be construed a privileged communication and was looking for a means to argue against that characterization. The letter, which the court later held was privileged on January 7, 1987, should not have been used as part of FAB's solicitation.

■ Bloxom's sending of the FAB plan and privileged letter to Ruffo, as well as his discussions with Ruffo concerning the FAB plan, clearly violated the language of § 1125(b). In addition, Latham Four

failed to prove that it did not rely on information provided to it through Bloxom's impropriety. Latham Four's vote rejecting the debtor's plan therefore will be invalidated pursuant to § 1126(e).

## FAB

■■■■ It is undisputed that as part of its solicitation process, FAB sent its proposed reorganization plan for Century to SWG, BTNY, and Latham Four. Such action clearly violated the language of § 1125(b). In addition, FAB's action violated the spirit of § 1121(b) since FAB was apparently seeking approval of a plan which was not yet filed and which it could not file pursuant to § 1121(b). FAB's failure to comply with the provisions of the Bankruptcy Code and the spirit of the law requires imposition of sanctions. However, Century's request that FAB be prohibited from participating further in the proceedings and that its rejection of the plan be held invalid is too harsh even though BR 2019(b)(1)[3] so permits. Imposition of the named sanctions is discretionary. Under all the circumstances of this case, the court views the imposition of monetary sanctions more appropriate.

An order is attached.

## ORDER

AND NOW, June 19, 1987, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. Debtor's motions to designate and to hold invalid the votes of SWG Acquisition Corporation and Bankers Trust New York Corporation are DENIED.
2. Debtor's motion to designate and to hold invalid the vote of Latham Four Partnership is GRANTED.
3. Debtor's motion for sanctions against FAB is GRANTED as follows:

(a) FAB shall be responsible for and pay to Debtor's counsel all costs incurred by Debtor in prosecuting these four related motions.

(b) Debtor's counsel shall file and serve an affidavit and itemization of fees and expenses in a form sufficient to satisfy the requirements of 11 U.S.C. § 330.

(c) FAB shall make payment within 15 days of receipt of the documents required under ¶ (b) *supra.*

---

**3.** *Failure to Comply; Effect.* On motion of any party in interest or on its initiative, the court may

(1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule *or with any other applicable law regulating the activities and personnel of any* *person, committee, or indenture trustee or any other impropriety in connection with any solicitation* and, if it so determines, the court may refuse to permit that person, committee, or indenture trustee to be heard further or to intervene in the case (emphasis added).