### In re TEMPLE RETIREMENT COMMUNITY, INC., d/b/a The Village on Canyon Creek, Debtor.

### Bankruptcy No. 87–60663.

United States Bankruptcy Court, W.D. Texas, Waco Division.

Nov. 17, 1987.

George E. Henderson, Austin, Tex., for Indenture Trustee.

Michael R. Rochelle, Rochelle & Balzersen, Dallas, Tex., for debtor.

Patricia M. Nagel, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for LeGan, Inc.

Leslie Thacker, Houston, Tex., pro se.

## MEMORANDUM OPINION

LEIF M. CLARK, Bankruptcy Judge.

First RepublicBank Temple, N.A., is the indenture trustee for $15.5 million worth of revenue bonds issued by the Bell County Health Facilities Development Corporation for the Village on Canyon Creek project. Capital raised by the bond issue went toward the construction of a retirement community operated by Temple Retirement Community, Inc., the Debtor in this case. The Debtor filed bankruptcy July 31, 1987. The same day it filed bankruptcy it filed a Plan of Reorganization and Disclosure Statement. A disclosure statement was approved by the Court October 13, 1987, after a hearing on October 1, 1987. At the hearing, the Court set confirmation on the plan for November 23, 1987.

The bondholders have disagreed among themselves regarding the best way to address the home's financial difficulties, even prior to the filing. In the spring of this year, the Board of Directors of the retirement home decided to hire LeGan, Inc. to manage the retirement facility and also entered into a contract with LeGan for LeGan to acquire the retirement community. This arrangement was memorialized in the plan filed by the Debtor. Americare, the previous management, was let go. Some of the bondholders, however, insisted that the retirement home should not be sold. Instead, they maintained that the Board should have hired a different management company and should have opted not to sell out. Evidently, this dissident group believed that this strategy would yield a much higher percentage return to bondholders.

The dissension has not abated during the pendency of these proceedings. In fact, it has boiled up during the formation of the official bondholders' committee, making it difficult for the committee to even select counsel, much less take a position on the Debtor's plan. As a result, the committee's active participation in the disclosure and solicitation process has been hampered if not entirely paralyzed.

At one of the bondholder committee's meetings, a vote was taken whether to support the Debtor's proposed plan. A majority of the quorum present voted for the plan. Some of the dissenting minority decided to ask the indenture trustee to "inform all bondholders on the ballot which he would circularize, that we do not concur in the sale of the facility to LeGan as we feel the operation of the community by a management company under the direction of the bondholders' committee would effect a more advantageous result to the bondholders, the residents and all creditors." The indenture trustee filed a motion seeking guidance from the Court in the face of this request.

Section 1125(b) of the Bankruptcy Code states that

"an acceptance or rejection of a plan may not be solicited after the commencement of the case ... from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."

11 U.S.C. § 1125(b) (West 1987). In construing Section 1125(b) the bankruptcy court for the District of Delaware observed that "once a copy of the court-approved disclosure statement and a plan are received by the solicitee, rejections and acceptances clearly may be solicited by any other interested party. While Section 1121(b) of the Code gives a debtor the

exclusive right to file a plan within the first 120 days after an entry of an order for relief, it does not give a debtor the exclusive right to solicit acceptances. Any other interpretation would negate the provisions of Section 1125(b) which state the requisites necessary to solicitation of acceptances *or rejections* (emphasis added). . . ., however, the solicitation, whether it be performed by the debtor or some other interested party, must be limited by the contents of the plan, the disclosure statement, and any other court-approved solicitation material. This solicitee may not be given information outside of these approved documents." *Matter of Century Glove, Inc.,* 74 B.R. 952, 955 (Bankr.D.Del.1987). In the *Century Glove* case, creditors solicited rejections by dangling an alternative plan before other creditors, suggesting, in essence that, if the debtor's plan were scuttled, then a better alternative could then be proposed. Certainly, the facts of the *Century Glove* case were more egregious as creditors in that case were actually sent a copy of an alternative plan for their review, while here, the dissenting bondholders merely suggest the availability of an alternative. However, they want that alternative to bear the *imprimatur* of the indenture trustee, who would of course be viewed by most bondholders as unbiased and independent. The clear suggestion of such a letter would be that another undisclosed plan (with a potentially juicier payoff for bondholders) awaits in the wings if the Debtor's plan is voted down. One of the dissenting bondholders had in fact brought with him a representative of the management company which the dissenting bondholders thinks should be operating the retirement community, intending to provide both the Court and potentially the bondholders with enough information to tempt bondholders (and perhaps the Court) to wait for the next plan before opting for the current plan.

The suggestion of a better alternative just around the bend, unfortunately, is not backed up with full disclosure. Given that the Debtor's plan is proposed within the original exclusivity period, an alternative plan and disclosure statement cannot and should not be considered at this point in the case. For better or worse, the Bankruptcy Code was designed to give the Debtor a clear advantage early on in the case, unfettered by competing plans. That advantage disappears six months into the case. Early in the case, however, the Court is constrained to give effect to the clear policy of Congress. That policy could be undermined by thinly veiled suggestions of better alternatives, unsupported by full disclosure.

This is not to say that a dissenting creditor-group would be prohibited from soliciting rejections of the proposed plan. To hold otherwise would be to eviscerate that portion of Section 1125 which expressly permits solicitation of rejections. It is the particular combination of facts in this case which have mandated this Court's holding. The clear suggestion of an alternative plan coupled with the *imprimatur* of the bondholder's indenture trustee too strongly suggests to innocent and far removed investors that a viable (though thoroughly unproved) alternative awaits if only bondholders will reject the current plan. The taint could perhaps have been cured had the dissenting bondholders not sought the *imprimatur* of the indenture trustee, and had instead moved early for approval of solicitation materials or for inclusion of the alternative in the disclosure statement prior to its approval. These dissenting bondholders are certainly not prohibited from arguing that the Debtor's plan does not exhaust the panoply of possibilities for reorganization, nor are they prohibited from pointing out failings which they perceive to be present in the Debtor's plan. The bald suggestion of an alternative plan developing in the wings is, however, impermissible.

For the foregoing reasons, this Court holds that the indenture trustee is not required to forward the solicitation suggested by the dissenting bondholders. The dissenting bondholders may, if they so choose, independently solicit rejections and may in the process, point out the extent to which, in their view, the current plan falls far

short of what could be done. References to other management companies or to other plans are, however, expressly prohibited, because they fall outside the scope of information furnished in the Debtor's disclosure statement which has already been approved by this Court. It is therefore

ORDERED that the indenture trustee is excused from forwarding communications furnished by the dissenting bondholders to bondholders. It is further

ORDERED that the dissenting bondholders are prohibited from soliciting rejections by reference to alternative plans or alternative management companies.

371

APPENDIX

LESLIE · THACKER
ATTORNEY AT LAW
2711 WOODHEAD STREET
HOUSTON, TEXAS 77098

TELEPHONE 713·524·5794

October 21, 1987

RE: Temple Retirement
Community Inc #87 60663

Mr George Henderson
Attorney at Law
600 Congress Avenue
Austin, Tx 78701

Dear Mr Henderson:

Chairman of the bondholders Committee, Reynolds Faulk, Mick
Williams and I would like for Trustee, David Uechi, to inform
all bondholders on the ballot which he will circularize, that
we do not concur in the sale of the facility to LeGan as we
feel the operation of the community by a management company
under the direction of the bondholders committee would effect
a more advantageous result to the bondholders, the residents
and all creditors.

Yours truly,

Leslie Thacker

LT:be