**FIRST AMERICAN BANK OF NEW YORK ("FAB"), Plaintiffs,**

**v.**

**CENTURY GLOVE, INC., Defendant.**

**CENTURY GLOVE, INC., Plaintiff,**

**v.**

**FIRST AMERICAN BANK OF NEW YORK, Defendant.**

**Civ. A. Nos. 87–395–JRR, 87–403–JRR.**

United States District Court,
D. Delaware.

Jan. 5, 1988.

Eduard F. von Wettberg, III, of Morris, James, Hitchens & Williams, Wilmington, Del., for Century Glove, Inc.

Peter J. Walsh, of Bayard, Handelman & Murdoch, Wilmington, Del., for First American Bank of New York.

Lawrence G. Ashby, of Ashby, McKelvie & Geddes, Wilmington, Del., for SWG Acquisition Corp.

Peter J. Schmerge, of Eaton & Van Winkle, New York City, for Bankers Trust N.Y. Corp.

David Ruffo, Albany, N.Y., for Latham Four Partnership.

## OPINION

ROTH, District Judge.

### INTRODUCTION

This is an appeal and cross-appeal from an order of the United States Bankruptcy Court for the District of Delaware which order designated and invalidated one creditor's vote rejecting Debtor's plan of reorganization and imposed sanctions against another creditor. *In re Century Glove, Inc.,* 74 B.R. 952 (Bankr.D.Del.1987). Appellants are First American Bank of New York (FAB) and Latham Four Partnership (LFP). FAB is a major creditor of the Debtor, Century Glove, Inc., with an undersecured secured claim of approximately $2 million. LFP is an unsecured creditor with a claim of $142,623. Cross-appellant is the Debtor, Century Glove, Inc.

### FACTS

The facts, based on the record below, are as follows: Debtor Century Glove filed its plan of reorganization (the "Plan" or "Debtor's Plan") with the Bankruptcy Court on August 1, 1986. A disclosure statement regarding the Plan was approved by the Court on December 2, 1986. The Plan provided that non-priority unsecured creditors were to be paid with proceeds of several lawsuits, including a $5 million lawsuit filed by Century Glove in Bankruptcy Court against FAB and others. A motion to dismiss the $5 million suit has been filed by FAB and is still pending.

At the disclosure statement hearing, FAB advised the Court and all parties that it had drafted an alternate plan of reorganization (the "FAB Plan") which it would file at the end of Century Glove's exclusivity period. FAB subsequently solicited rejection votes from creditors voting on Debtor's Plan. Debtor Century Glove moved to invalidate the votes of certain creditors on the ground that FAB had improperly solicited and procured the rejection votes of LFP and two other creditors, SWG Acquisition Corporation (SWG) and Bankers Trust New York Corporation (BTNY). Debtor's allegations required the Bankruptcy Court to consider whether FAB acted in violation of the disclosure and exclusivity requirements of Chapter 11. The disclosure section at issue here is 11 U.S.C. § 1125(b):

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

The exclusivity requirement is set forth in 1121(b):

> Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

FAB's solicitations were improper, alleged Century Glove, because FAB had forwarded its own draft plan to three creditors during Debtor's exclusivity period without prior bankruptcy court approval.

In ruling on Debtor's motion, the bankruptcy court concluded that § 1125(b) requires prior court approval of all materials forwarded in connection with a solicitation. The court stated that a solicitation "must be limited by the contents of the plan, the disclosure statement, and any other court-approved solicitation material. The solicitee may not be given information outside of these approved documents." *Id.* at 955. Thus, the court held it was improper under § 1125(b) for FAB to have provided a copy of its own plan to certain creditors.

276

Based on its holding that FAB had violated § 1125(b), the court examined whether the rejection votes of creditors tainted by the improper solicitation would be invalidated under § 1126(e), which provides:

On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

The court interpreted § 1126(e) to mandate invalidation of a vote cast following an improper solicitation "unless [the] solicitee can show it did not rely on information provided to it via improper solicitation." *Id.*

The court next examined whether the tainted creditors had relied on the improper solicitation in casting rejection votes. John Bloxom was the attorney for FAB who allegedly engaged in the improper solicitations. The bankruptcy court reviewed Bloxom's communications with each of the creditors and made the following findings of fact:

(1) *SWG.* Bloxom contacted SWG's attorney, Cecil Miskin, to solicit SWG's vote against the Debtor's Plan. During the course of their phone conversation, Miskin asked Bloxom whether another plan of reorganization existed and, upon learning of the FAB Plan, requested Bloxom to send him a copy. SWG's counsel never received a copy of the Plan. SWG's president, Kent Millington, stated in his affidavit that he had not spoken with FAB's attorneys and had not received a copy of FAB's plan prior to voting against the Century Glove plan. Millington also represented that he had independent reasons for rejecting the Century Glove plan. The bankruptcy court concluded that Millington could not, therefore, have relied on the Bloxom communication when casting his vote against the Century Glove plan. The court stated, "Although it was improper for Bloxom to send SWG's counsel a copy of the FAB Plan, it would be unfair to penalize SWG when its representatives did not receive the Plan or discuss it with anyone."

(2) *BTNY.* Bloxom communicated with James Hellmuth, Vice President of BTNY, and Anna Panayotou, an attorney for BTNY. Bloxom first called Hellmuth to inquire why BTNY, as a creditor, was not more active in the Century Glove case. Hellmuth responded that he was not aware of the case. Later, Bloxom informed Panayotou of the FAB plan and she requested a copy of it; she advised Bloxom that in September, 1986, BTNY had made a preliminary decision to reject Debtor's Plan. Hellmuth's affidavit corroborated that this preliminary decision had been made. In December, 1986, Bloxom, Hellmuth, and Panayotou participated in a telephone conference during which Hellmuth confirmed to Bloxom that BTNY would reject the Debtor's Plan; the FAB plan was not discussed. Panayotou received a copy of the FAB plan after the BTNY ballot was executed.

Based on these facts, the bankruptcy court ruled that BTNY's vote would not be invalidated. The court reasoned that there was no showing of reliance by BTNY on Bloxom's representations regarding the FAB plan. The court stated, "Again, it would be unjust to penalize BTNY for Bloxom's inappropriate solicitation when that solicitation did not affect BTNY's vote."

(3) *LFP.* Bloxom called David Ruffo, attorney for Charles Touhey, general and managing partner of LFP, to find out whether LFP would vote against Debtor's Plan. Bloxom mentioned the existence of the FAB Plan and upon Ruffo's request forwarded a copy to him. Ruffo also received from FAB a copy of a letter to the creditor's committee from counsel for the committee, recommending against Debtor's Plan. FAB had secured a copy of this letter from a former member of the creditor's committee. The letter was later held by the court to be privileged and inappropriate to be used as part of FAB's solicitation.

Ruffo read the FAB plan and later discussed it with Bloxom. During his deposition, Bloxom stated that he had generally described the FAB Plan to Ruffo as it

compared to Debtor's Plan. Particulary, Bloxom had discussed Debtor's intention to make mandatory payments from the proceeds of the pending lawsuits.

The bankruptcy court invalidated LFP's vote. The court held that LFP "failed to prove that it did not rely on information provided to it through Bloxom's impropriety." *Id.* at 958. Forwarding the FAB plan to solicitees, according to the court below, also violated the "spirit of § 1121(b)" which guarantees the exclusive period during which only Debtor's Plan(s) could be considered. In so stating, the court did not make an explicit finding that FAB's conduct amounted to solicitation of acceptances of its own plan. Rather, the court gave a qualified finding: "FAB was *apparently* seeking approval of [the FAB] Plan which was not yet filed and which it could not file pursuant to § 1121(b)." *Id.*

The court concluded that "FAB's failure to comply with the provisions of the Bankruptcy Code and the spirit of the law require[d] the imposition of sanctions." *Id.* The court found that Bankruptcy Rule 2019(b)(1) permitted the Court to ban FAB's further participation in the proceedings and/or to invalidate FAB's rejection vote. Deeming these two sanctions as unduly harsh, the court instead imposed monetary sanctions and required FAB to pay Debtor the costs of prosecuting these motions.

## INTERLOCUTORY OR FINAL ORDER

Before we discuss to the merits of the appeal, we need first to touch upon an issue not raised by the parties: whether this appeal is of interlocutory or final orders. The two orders which are subject of this appeal are (1) the designation and invalidation of LFP's rejection vote and (2) the award of costs to Debtor. Appeals to this court from the bankruptcy court may be taken as a matter of right from all final judgments, orders, and decrees and with the permission of the court from all inter-

locutory orders and decrees. 28 U.S.C. 158(a). As a general rule, our decision here may not itself be appealed to the Third Circuit Court of Appeals if the bankruptcy court's determination is properly characterized as interlocutory. 28 U.S.C. 158(d). We are not, however, compelled ourselves to decide the finality question because we have jurisdiction to review both final and interlocutory decisions.[1] We do note that, since the time of the filing of this appeal, the Third Circuit has held that bankruptcy orders, imposing sanctions, are interlocutory when the form and amount of sanctions has not yet been determined. *In re Jeannette Corporation,* 832 F.2d 43 (3d Cir.1987). This holding implies then that, when the form and amount of the sanction have been definitely determined, the sanction order is final. In this case, the bankruptcy court imposed monetary sanctions on FAB in a definite amount; FAB was ordered to pay to Debtor's counsel all costs incurred by Debtor in prosecuting the motions to invalidate creditors' votes. *In re Century Glove,* 74 B.R. at 958. Although we do not here reach a decision on the matter, the *Jeannette* case suggests the sanction order below is a final order. The designation and invalidation order, on the other hand, would appear to be interlocutory because the results of the vote on the Debtor's Plan are yet to be tallied. The award of monetary sanctions against FAB was, however, based by the bankruptcy court on its finding that FAB's solicitation of LFP was improper. If the award of sanctions is indeed a final order, we still cannot review it without going behind it to examine the decision of the bankruptcy court on the designation/invalidation question.

## SCOPE OF REVIEW

Turning then to the merits of this appeal, we may undertake plenary review of the bankruptcy court's conclusions of law, *Hassler v. Assimos.* 53 B.R. 453, 456 (D.Del.1985). In contrast, our review of

1. Should it be proper to characterize the orders below as interlocutory, the appeal from those orders would present proper issues for our discretionary review because important issues raised below were wrongly decided. *Keene Corp. v. Johns–Manville,* 45 B.R. 833 (S.D.N.Y. 1984).

fact findings is confined to the clearly erroneous standard. Bankruptcy Rule 8013. When findings of fact are based on an incorrect legal standard, those findings are subject to plenary review on appeal. *In re Osborne*, 42 B.R. 988, 995 (W.D.Wisc.1984); *see also, Matter of Missionary Baptist Foundation*, 712 F.2d 206, 209 (5th Cir. 1983); *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262 (9th Cir.1982).

To apply these rules regarding the scope of our review to the decision below, we will first summarize the lower court's reasoning process: (1) the court held that Section 1125(b) requires that all solicitation material must be court-approved; (2) therefore, in the three instances that FAB supplied other creditors with a draft of its own Plan, it violated § 1125(b); (3) because of this violation, the votes of these creditors were subject to invalidation under § 1126(e), unless the creditors could prove that they did not rely on the improper materials; (4) as an alternate and tentative conclusion, the court found that FAB violated the spirit of § 1121(b) by "apparently" seeking approval of its own plan.

The first step of the lower court's reasoning is a legal conclusion regarding the interpretation of § 1125(b) and is subject to plenary review. The second step is an application of the conclusion in step 1 to the facts. Because we find the legal standard applied in step 1 is incorrect, step 2 is subject to plenary review as a fact finding based on an improper legal standard.

Our decision that the court wrongly interpreted § 1125(b), prevents us from reaching step 3. We note, without reaching any decision, that imposing a burden of proving non-reliance on creditors who are allegedly subject to improper solicitation is not supported by the language of § 1126(e) or by case law interpreting that section.

Step 4 may be read as *dicta* because the court qualified its finding that FAB was soliciting for its own plan and because the § 1125(b) interpretation alone could control the results below. Assuming for purposes of this appeal, however, that Step 4 is an alternative holding, the bankruptcy court did not apply the correct legal standard for finding that a "solicitation" had taken place; we, will, therefore, subject the court's findings, based on an improper standard, to plenary review.

## ANALYSIS

■ The bankruptcy court determined as a matter of law that § 1125(b) requires that solicitation materials be limited to the contents of the plan, the disclosure statement and any other court approved material. *In re Century Glove*, 74 B.R. at 955. We cannot accept this conclusion. The express language of 1125(b) does not limit the materials which a plan opponent may provide. Rather, this section mandates only that a solicitation may not be made "unless, at the time of or before such solicitation there is transmitted to such holder, the plan or summary of the plan, and a written disclosure statement approved ... by the court...." This language does not preclude the sending of materials in addition to the plan or summary of the plan and disclosure statement. Further, it does not impose a requirement that only court-approved materials may be forwarded.

The question next arises whether the history or policy underlying § 1125(b) requires that only court-approved materials accompany a solicitation. In response to this question, we note first that Chapter 11 of the Code rests on the policy that the negotiation process among interested parties to a reorganization will produce a fair settlement. *Collier on Bankruptcy* ¶ 1125.03 (Liking 15th ed. 1987) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 224 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6183) ("negotiation among the parties after full disclosure will govern how the value of the reorganizing company will be distributed among creditors and stockholders"). A critical restraint on this negotiation process is that "[t]he solicitation of acceptances or rejections of a proposed plan must be on the basis of adequate information." *Id.* (citing § 1125(b)). Section 1125(a)(1) sets forth guidelines for determination of the adequacy of a disclosure statement:

'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a *hypothetical reasonable investor typical of holders of claims or interests of the relevant class* to make an informed judgment about the plan. . . .

(emphasis added). Section 1125(a)(2) defines a typical investor as an investor who, among other things, has "such ability to obtain such information *other than the disclosure required by this section* as holders of claims or interests in such class generally have." § 1125(a)(2)(C) (emphasis added).

Because § 1125(a)(2)(C) contemplates that the typical investor will have information available to it regarding debtor's affairs through sources other than the disclosure statement, the adequacy of information will be determined with a view to a typical investor's outside sources. *Collier, supra,* at ¶ 1125.03[1]. For example, a perfunctory disclosure statement was deemed to contain adequate information where creditors had ample access to information regarding debtor's affairs necessary to make an informed decision. *In re Northwest Recreational Activities,* 8 B.R. 10, 12–13 (Banker.N.D.Ga.1980). The bankruptcy court's conclusion that under § 1125(b) all solicitation materials must be court-approved is inconsistent with the fact that a bankruptcy court must consider access to outside sources of information in determining the adequacy of information.

■ We further find that the Bankruptcy Code should be interpreted to foster free negotiation among creditors who are considering the merits of a proposed plan. Case law establishes that, when a plan of reorganization and disclosure statement are filed, opponents of the plan are "free to lobby among the voting parties and to request them to oppose acceptance." *In re East Redley Corporation,* 16 B.R. 429, 430 (Bankr.E.D.Pa.1982). The Bankruptcy Code itself limits the scope of such lobbying only through § 1126(e) which provides that votes procured pursuant to solicitations made in bad faith or in violation of the bankruptcy law may be invalidated. The lower court's finding that a solicitee may not be given information outside of court-approved materials contravenes the policy of free creditor negotiations. The supplying of such materials cannot in and of itself constitute bad faith.

The leading bankruptcy treatise cautions that plan opponents who solicit rejections at the same time proponents are soliciting acceptances should obtain from the bankruptcy court "an affirmative finding that rejections may be solicited on the basis of information contained in the disclosure statement filed by the proponents of the Plan and approved by the court." *Collier, supra,* at ¶ 1125.03[7]. The treatise warns that "[i]f opponents of a plan solicit rejections of such plan without a determination by the court whether additional disclosure is necessary, the opponents risk having the rejections which they obtain disallowed under section 1126(e) on the basis that the rejections were not solicited in accordance with the provisions of title 11." *Id.* We recognize that FAB could have insured that its solicitation efforts were appropriate if it had sought an affirmative finding from the bankruptcy court regarding the disclosure required and the lobbying permitted in connection with its solicitations. However, to obtain such a determination from the bankruptcy court is not an express requirement under the bankruptcy laws.

■ Finally, in regard to the question of whether FAB improperly solicited acceptance of its own plan, the court below found that FAB was "apparently" seeking approval of its plan when it provided creditors with a draft copy. 74 B.R. at 958. It is clear that in soliciting a rejection of a plan, a party may not simultaneously solicit acceptance of its own alternative plan in the absence of a court-approved disclosure statement which describes that plan. Such a solicitation would violate the express language of § 1125(b), and if made during the debtor's exclusivity period, would transgress the debtor's exclusive right to file a plan in accordance with § 1121(b). Because the Bankruptcy Code is designed to

facilitate free negotiation among parties regarding a proposed plan, however, negotiations should not be readily construed as "solicitations" of an alternate plan. *See, In re Snyder,* 51 B.R. 432 (Bankr.D.Utah 1985). In *Snyder,* the court faced a factually similar situation. The court found that a letter from an involuntary debtor in a Chapter 7 liquidation to all creditors, which letter proposed in detail five plans that could be alternatives to the Chapter 7 proceeding, was not a "solicitation" made in violation of § 1125(b). Debtor had requested comments on the five plans but the court found that the communication "did not constitute a specific request for official votes either accepting or rejecting a plan of reorganization...." *Id.* at 437. The court reasoned:

The terms "solicit" and "solicitation" as used in § 1125(b) of the Code, must be interpreted very narrowly to refer only to a specific request for an official vote either accepting or rejecting a plan of reorganization. The terms do not encompass discussions, exchanges of information, negotiations, or tentative arrangements that may be made by various parties in interest in a bankruptcy case which may lead to the development of a disclosure statement or plan of reorganization, or information to be included therein. If these activities were prohibited by 1125(b), meaningful creditor participation in Chapter 11 cases would cease to exist.

*Id.* at 437.

We adopt the *Snyder* standard, requiring a narrow interpretation of the terms "solicit" and "solicitation" in § 1125(b). Under this standard, we find that Bloxom's communications to the three debtors about the draft FAB plan do not fall within the narrow meaning of solicitation of acceptance of that plan. Bloxom did not make a "specific request for an official vote" in favor of the FAB Plan. Rather, in the case of three creditors, with whom the existence of the alternate plan was discussed in the course of negotiating rejection of the Debtor's Plan, Bloxom provided a copy of the FAB Plan at their request for their comment and review. The record reveals that prior to providing the three creditors with a copy of the FAB Plan, Bloxom was careful to explain that the plan was being provided only for discussion purposes and that only Debtor's Plan was on the table. Such a carefully confined distribution does not amount to a solicitation and, in fact, may only be fairly characterized as part of FAB's negotiations.

In sum, we find that § 1125(b) does not mandate prior court approval of all solicitation materials so long as the disclosure statement has been approved as required. Further, in forwarding the alternative plan to three creditors during the course of soliciting rejection of Debtor's Plan, FAB did not engage in a "solicitation" for the FAB Plan under 1125(b), and did not violate debtor's exclusivity period guaranteed under § 1121(b). Accordingly, the decision of the bankruptcy court to invalidate the vote of LFP under § 1126(e) because of improper solicitation is reversed. The decision to let stand the votes of BTNY and SWG is affirmed. In view of our determination that the LFP vote will stand, the decision to impose sanctions against FAB for improper solicitation of LFP must be reversed.

An appropriate order will follow.