## In re APEX OIL COMPANY, et al., Debtors.

### No. 87–03804–BSS.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Feb. 16, 1990.

Bernard Shapiro, Robert Jay Moore, Howard J. Weg, Gendel, Raskoff, Shapiro & Quittner, Clayton, Mo., Bernard Shapiro, Robert Jay Moore, Howard J. Weg, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., Dennis A. Ferrazzano, Barack, Ferrazzano and Kirschbaum, Chicago, Ill., for debtors.

Michael A. Kahn, Gallop, Johnson and Neuman, Steven N. Cousins, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, Mo., for unsecured Creditors Committee.

Robert H. Brownlee, Thompson & Mitchell, St. Louis, Mo., for Chemical Bank.

Kenneth Mallin, Coburn, Croft & Putzell, St. Louis, Mo.

### MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This case involves the solicitation of confirmation votes by a creditor, an Indenture Trustee, in an effort to reject the debtors' proposed plan of reorganization. The Indenture Trustee has asked this Court to determine whether the Court must approve all materials used in such solicitation prior to their dissemination.

### JURISDICTION

This court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

### FACTS

On February 12, 1990, the Debtors' Second Amended Disclosure Statement (hereinafter "Disclosure Statement") received approval from this Court. Chemical Bank (hereinafter "Chemical"), an Indenture Trustee, has expressed an intent to solicit

creditors in an effort to obtain a sufficient number of votes to reject and defeat the Debtors' proposed plan of reorganization (hereinafter "Plan"). On February 9, 1990, counsel for the Debtor made an oral motion requesting that Chemical Bank and all other parties in interest should be required to seek and obtain court approval of any solicitation materials prior to distribution to creditors.

The Debtor concedes that very little established case law exists in support of its position. In fact, other than a law review article and a case note,[1] the only authority which the Debtor cited was *In re Century Glove, Inc,* whose pertinent holdings were overruled by the district court and the Third Circuit. 74 B.R. 952 (Bankr.D.Del. 1987), *aff'd in part and rev'd in part sub nom. First American Bank of New York v. Century Glove, Inc.,* 81 B.R. 274 (D.Del. 1988), *aff'd in part,* 860 F.2d 94 (3rd Cir. 1988).

The Debtor offers several reasons why this Court should require its approval of all additional materials sent to creditors. First, the Debtor contends that court approval is absolutely necessary to ensure that creditors do not receive false, misleading, or inaccurate information. Second, such a requirement would serve to obviate possible "irreversible and irreparable damage" which may result from such information. Finally, the Debtor argues that court approval is necessary to maintain the integrity of the voting process.

Chemical, on the other hand, relies solely on *Century Glove, Inc. v. First American Bank of New York,* 860 F.2d 94, 100 (3d Cir.1988), in which the Second Circuit held that once a court has approved a disclosure statement for distribution to creditors, the court need not approve solicitations. Thus, based on the *Century Glove* holding, Chemical requests that after Disclosure Statement approval, this Court should not require its prior approval of any third party solicitation relating to the Debtors' Joint Plan.

## DISCUSSION

### I. Section 1125(b) and the Necessity of Court Approval After Disclosure Statement Confirmation

■ Section 1125(b) of the Bankruptcy Code provides, in pertinent part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information....

Thus, the claim holder's receipt of the debtor's proposed plan of reorganization and disclosure statement approval are both prerequisites to a solicitation of creditors to accept or reject the plan. Few cases address the issue of whether, after disclosure statement approval, a party must seek approval of all materials which will be sent in solicitation of the claim holder's acceptance or rejection of the plan. However, review of the existing case law of this area of the law is instructive.

Undoubtedly the seminal case in the area of post-disclosure statement solicitation is *In re Century Glove, Inc., supra.* In *Century Glove,* a creditor, soliciting rejections of the debtor's plan, sent certain creditors draft copies of an alternative plan after the court had approved the debtor's disclosure statement. The United States Bankruptcy Court for the District of Delaware held that a party in interest may solicit acceptances or rejections of a proposed plan of reorganization after the commencement of the case only after the transmittee has received a copy of the plan or summary thereof and a copy of the court-approved disclosure statement. 74 B.R. at 955. The court, invalidating certain creditors' rejection votes, further held that such solicita-

**1.** *See* Glassman, *Solicitation of Plan Rejections Under the Bankruptcy Code,* 62 Am.Bankr.L.J. (Summer 1988); Note, *Disclosure of Adequate Information In A Chapter 11 Reorganization,* 94 Harv.L.Rev. 1808 (1981).

tions "must be limited by the contents of the plan, the disclosure statement, and any other court-approved material". *Id.* at 955. Thus, the bankruptcy court assumed, and the Debtor herein urges, that after court approval of the debtor's disclosure statement, a party may only solicit a claim holder's acceptance or rejection of a plan with materials which have received prior court approval. Unfortunately, the court went no further in expounding upon its rationale for such a restriction.

In *In re Temple Retirement Community, Inc.*, 80 B.R. 367 (Bankr.W.D.Tex.1987), a case decided just five months after the bankruptcy court handed down its *Century Glove* decision, dissenting bondholders asked the indenture trustee to inform other bondholders of their objections to the debtor's proposed plan. Ruling on the indenture trustee's motion for guidance on this request, the United States Bankruptcy Court for the Western District of Texas held that the indenture trustee was not required to forward the dissenting bondholders' solicitations to other bondholders. 80 B.R. at 369. The court reasoned that although the dissenting bondholders did not put forth an alternative plan, as was the case in *Century Glove*, the proposed solicitation letter would imply that another proposed plan of reorganization awaited bondholders if they rejected the current plan before them. *Id.* Such an implication, the court ruled, could not be made during the exclusive six month period which the debtor enjoyed as this would undermine the advantage which the Bankruptcy Code sought to afford the debtor. *Id.*

The *Temple Retirement* court, however, qualified its ruling, stating that while the suggestion of an alternative plan through an indenture trustee may be impermissible, this should not be construed as a blanket prohibition of dissenting creditors' soliciting rejections of a proposed plan. *Id.* The court stated that the solicited objections might have been approved had the dissenting bondholders "moved for early approval of solicitation materials or for inclusion of the alternative in the disclosure statement prior to its approval". *Id.* Thus, the

court, essentially following the ruling enunciated by the bankruptcy court in *Century Glove*, concluded that the dissenting bondholders could independently solicit rejections and point out the shortcomings of the debtor's plan, but could not furnish information which fell outside the scope of the disclosure statement, which the court had approved.

Affirming the district court's reversal of the bankruptcy court ruling in *Century Glove, supra*, the United States Court of Appeals for the Third Circuit held that § 1125(b) does not empower a bankruptcy court to require its approval of all materials used to solicit a claim holder's acceptance or rejection of a proposed plan of reorganization. 860 F.2d at 100. Citing the provision's legislative history, the Third Circuit stated:

The statute, however, never limits the facts which a creditor may receive, but only the time when a creditor may be solicited. Congress was concerned not that creditors' votes were based on misinformation, but that they were based on no information at all. *See* H.R. 95–595, at pp. 225–25, 95th Cong. 2d Sess., 124 Cong. Rec. ____, reprinted in, 1978 U.S.C.C.A.A.N. 5963, 6185 (House Report). Rather than limiting the information available to a creditor, § 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote. *See* S.R. 95–989, at pp. 121, 95th Cong., 2d Sess., 124 Cong.Rec. _____, reprinted in, 1978 U.S.C.C.A.A.N. 5787, 5907 ("A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on factually supported expectations as to the future course of the business....") (Senate Report). The provision sets a floor, not a ceiling. Thus, we find that § 1125 does not on its face empower the bankruptcy court to require that all communication between creditors be approved by the court.

*Id.* at 100.

The court further stated that Congress enacted this section with the intent of providing the claim holder with the "adequate

information" necessary to aid them in their negotiations. Thus, the requirement that solicitation materials receive prior court approval hampers and indeed undercuts this statutory purpose. *Id.* at 100–01. Finally, the court observed that such a rule would force a prudent creditor to gain court approval of every communication with another creditor. This would greatly burden the court with additional hearings, which in turn would add both expense and delay to proceedings which already require great efficiency. *Id.* at 101.

In *In re Gulph Woods Corp.*, 83 B.R. 339 (Bankr.E.D.Pa.1988), the debtor sent to creditors a letter urging their rejection of a creditor's competing plan, a pre-marked ballot rejecting the competing plan, and a stamped envelope with the address of the debtor's attorney. 83 B.R. at 341. The creditor, seeking injunctive and declaratory relief, contended that the debtor's solicitation had tainted the voting process. *Id.* The debtor argued that § 1125(b) permitted such solicitation after court approval of the disclosure statement. *Id.* The United States Bankruptcy Court for the Eastern District of Pennsylvania held that while an interested party may solicit rejections of a creditor's proposed Chapter 11 plan, such solicitations may not contain mischaracterizations or falsehoods which might unfairly influence voters. *Id.* at 343. The court ruled that while the debtor's dispatch of the letter did not violate § 1125(b), the debtor's pre-marking of ballots was *per se* improper.[2] *Id.* In addition, the court stated:

> In sum, we believe that there is a delicate balancing process between the principles of the first amendment and the purposes of § 1125(b) in which a court must engage to assess the legality of a certain communication. Results will therefore be fact-determinative. Since the consequences of an improper and deceptive communication can be the rather severe monetary sanction of paying to attempt to repair the distortion to the voting process caused by the improper

communication, *See Century Glove* (bankruptcy court), *supra,* 74 B.R. at 958, it is hoped that parties desiring to make communication will opt to seek prior court approval in any doubtful cases. *Id.*

Thus, the *Gulph Woods* court, relying on the bankruptcy court's *Century Glove* decision, did not make court approval of all solicitation materials an absolute prerequisite to their dissemination.

In *In re Media Central, Inc.*, 89 B.R. 685 (Bankr.E.D.Tenn.1988), the debtor solicited votes both on its filed plan and on two alternative, unfiled plans which lacked court-approved disclosure statements. The United States Bankruptcy Court for the Eastern District of Tennessee held that the debtor's solicitation of votes for two unfiled plans lacking approved disclosure statements constituted a violation of § 1125(b) of the Bankruptcy Code. 89 B.R. at 689. More pertinent to the instant case, the court, following the district court's ruling in *Century Glove*, further held that the debtor may send to creditors information about the debtor and the debtor's progress in plan negotiations which was not present in the court-approved disclosure statement. The court, referring to that decision, stated that:

> [a]s long as a disclosure statement has been approved by the court, additional solicitation materials that have not been court-approved may be sent to creditors and equity security holders. The district court [in *Century Glove*] reasoned that § 1125 contemplates creditors and equity security holders being able to obtain information about the debtor's affairs through sources other than the court-approved disclosure statement. The additional solicitation material is but one additional source in which information can be imparted to the creditors and equity security holders.

*Id.* at 691.

---

2. For a similar case discussing the impropriety of premarking ballots, see *In re Petroleum Products, Inc.,* 99 B.R. 451 (Bankr.D.Kan.1989).

While allowing solicitation of information outside of the disclosure statement, the court stated that parties who engage in such solicitation do so at their own risk. Failure to obtain court approval before distributing such information, the court warned, may lead to later vote disqualification upon a finding that "the statements or information were improper and the solicitation in bad faith". *Id.* Thus, the court concluded that the only way for a party to ensure that its solicitation efforts are completely appropriate is to first seek court approval. *Id.*

Finally, in *In re Gilbert*, 104 B.R. 206 (Bankr.W.D.Mo.1989), the United States, pursuant to section 1125(b) and 1126(e) of the Bankruptcy Code, questioned the propriety of one creditor's alleged oral solicitation of another creditor's acceptance of the debtor plan four months before the court's approval of the plan and disclosure statement. 104 B.R. at 214. The United States Bankruptcy Court for the Western District of Missouri held that although such communication constituted an untimely solicitation of the creditor's vote, the court would not sanction such conduct absent a showing of bad faith. *Id.* at 215. Following *Gulph Woods*, the court ruled that the soliciting creditor was not guilty of such bad faith. *Id.* Evidence of such conduct, the court stated, would include a solicitation which contained falsehoods or misrepresentations, or the attempted offering or suggestion of an alternative plan without adequate disclosure, none of which were present in the case before it.[3] *Id.*

## II. The Law as Applied to the Instant Case

■ Synthesizing the above case law, the current state of the law regarding § 1125(b) and solicitation of creditors after the court has approved the debtor's disclosure statement may be stated as follows. The ultimate objective in the balloting process is to ensure that the voting creditors receive "adequate information". Thus, creditors may engage in "free and open negotiations". Furthermore, debtors may distribute information not contained in the approved disclosure statement at their peril, as § 1125 contains no express provision which requires bankruptcy courts to become filters for all material used in solicitation of creditor votes. Thus, this Court holds that a party need not receive prior court approval of all material used to solicit another creditor's acceptance or rejection of the debtor's plan.

This Court does not mean to imply from the above holding, however, that a party's post-disclosure statement solicitation efforts should go completely unchecked. That is, assuming that the debtor's exclusivity period has expired, soliciting parties need not obtain prior court approval of solicited materials *only if:*

1) the information provided is truthful and absent of any false or misleading statements or legal or factual mischaracterizations;

2) the information is presented in good faith;

3) the soliciting party does not propose or suggest an alternative plan which has yet to gain court approval or otherwise failed to travel through the appropriate legal channels, as dictated by the Bankruptcy Code.

This Court believes that the third point has been the most problematic for courts and creditors alike, and therefore exhibits the greatest need for further clarification.

■ The overriding goal in the voting phase of a confirmation process is to provide the holders and interests with as much relevant and meaningful information as possible. In furtherance of this goal, Chemical or other claim holders may solicit acceptances or rejections of the Debtor's Plan. However, this Court shall not allow a party to circumvent the system established by the Bankruptcy Code by proposing or suggesting an alternative plan which has neither gained court approval nor been subject to adequate disclosure. Since a party may ask what are the parameters of

---

**3.** The court also stated the timing of the creditor's solicitation proved his lack of bad faith. Because the solicitation occurred before the balloting period, the solicited creditor would feel very little pressure as to how it should vote. 104 B.R. at 215.

such solicitation, the following checklist may prove helpful:

A soliciting party may without prior court approval—

1) offer a narrative, evidence, conclusions, or opinions contrary to that enunciated in the plan or disclosure statement;

2) assert positions, evidence, conclusions, or opinions of relevant matters which are not contained in the plan or court-approved disclosure statement;

3) offer evidence or opinions of an alternative liquidation analysis, since the debtors have a liquidation analysis as part of their disclosure statement.

In sum, a soliciting party may react to and present contrary views regarding the *court-approved disclosure statement,* but may not present or suggest an alternative plan which has not been subject to court scrutiny regarding adequacy of disclosure. Accordingly, it is

Ordered that Chemical Bank, the Indenture Trustee, need not seek this Court's approval of material used in solicitation of creditors' acceptances or rejections of the Debtor's plan of reorganization, consistent with this opinion.