### In re MEDIA CENTRAL, INC., Debtor.

### Bankruptcy No. 1–87–01483.

United States Bankruptcy Court,
E.D. Tennessee.

May 16, 1988.

Glenn C. Stophel, Chattanooga, Tenn., for debtor.

W. Neil Thomas, III, Chattanooga, Tenn., for Donatelli & Kline.

### MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

Alleging that the debtor-in-possession, Media Central, Inc. ("Media Central"), improperly solicited acceptances to its proposed plan of reorganization, a creditor, Donatelli & Kline, Inc. ("Donatelli & Kline"), filed a motion for sanctions in this

chapter 11 case. Donatelli & Kline asserts that Media Central improperly solicited votes on its plan (1) by asking creditors and equity security holders to vote on possible alternative plans in the absence of court-approved disclosure statements for the alternative plans; and (2) by sending creditors and equity security holders information about the debtor and debtor's progress in plan negotiations that was not included in a court-approved disclosure statement.

A hearing on Donatelli & Kline's motion was held on May 6, 1988. Following argument by counsel, the court announced from the bench that votes solicited by Media Central on its present plan of reorganization would be disallowed. The court further instructed that any subsequent disclosure statement sent out by Media Central to solicit votes on any amended plan must contain a curative instruction advising creditors and equity security holders to disregard the first solicitation. Finally, the court reserved ruling on whether it should deny fees and expenses incurred in connection with the initial solicitation.

During oral argument counsel for Media Central stated that the debtor did not intend to rely on any of the votes heretofore solicited on its plan of reorganization because Media Central planned to file an amended plan and disclosure statement that would require a second solicitation. Consequently, counsel for Media Central did not oppose Donatelli & Kline's request that the votes on Media Central's present plan be disallowed.

Although the court stated its reasons for its decision orally on the record at the hearing, this memorandum is being entered to supplement and incorporate those reasons in written form.

I

Media Central, the debtor-in-possession, is a corporation which operates and manages nine television stations pursuant to management contracts. The nine stations are separate partnerships and each is in a chapter 11 case in this court.

Donatelli & Kline has filed a proof of claim only in the Media Central bankruptcy case. Its claim is based upon an action for breach of contract which is currently being litigated in the district court for the Eastern District of Tennessee.[1]

On October 30, 1987, Media Central filed its first plan and disclosure statement in this case. At the same time eight of the nine debtor television stations also filed plans and disclosure statements. The plans propose, with one exception, a change in the structure of the debtor television stations from partnerships to corporations. The plans further provide that the corporate stations would become subsidiaries of Media Central. Although the Media Central case and the station cases have not been consolidated, the disclosure statements of Media Central and the stations have been considered together at the disclosure statement hearings held in this case.

On December 14, 1987, the first disclosure statement hearing was held. At the hearing counsel for Media Central and the television stations announced that amended plans and disclosure statements would be filed.

On January 12, 1988, Media Central and the televisions stations filed their first amended plans and disclosure statements. On January 19, 1988, during a disclosure statement hearing, the court directed Media Central and the stations to make certain changes in and additions to the disclosure statements.

Thereafter, on February 8, 1988, Media Central and the stations filed their second amended disclosure statements. Both the Unsecured Creditors' Committee in the station cases and another major creditor filed objections to the changes made. Those objections along with other pending motions were heard on March 1, 1988. At that hearing the court announced it would approve the disclosure statements with a few minor changes.

---

**1.** By agreement of the parties, the court previously lifted the automatic stay to allow the district court litigation to proceed.

Another issue addressed at the hearing was whether the court should again extend the exclusivity period under 11 U.S.C.A. § 1121(d) (West Supp.1988) to allow Media Central and the stations additional time to obtain acceptances to their plans. At a previous hearing the court had extended the exclusivity period to April 22, 1988. The court announced it would not further extend the exclusivity period for purposes of allowing Media Central and the stations to cram down major creditors who had not accepted the debtors' plans. So that Media Central and the stations could ascertain the overall support of major creditors and equity security holders for their plans, and in the interest of holding down expenses, the court, without objection from interested parties, allowed Media Central and the stations to direct an initial solicitation to major creditors and equity security holders. A status conference on these cases was scheduled for April 21, 1988, one day prior to the expiration of the exclusivity period. At the status conference the court was to consider extending the exclusivity period depending upon the debtors' progress in obtaining acceptances to their plans.

Following the hearing on March 1, 1988, Media Central mailed to certain creditors and equity security holders a packet of materials including the court-approved amended disclosure statement; the amended plan; the order dated March 2, 1988, directing that minor changes be made to the disclosure statement; the order dated March 10, 1988, approving the disclosure statement; an order entered by the district court in the case of Donatelli & Kline v. Media Central; and a ballot. Also included with these materials was a document styled "Submission of Disclosure Statement, Solicitation for Support of Plans and Notice of Status Conference." Although never filed with the court, the document resembles a pleading-type document with both the case style and the bold face language, "In the United States Bankruptcy Court for the Eastern District of Tennessee Southern Division" typed at the top of the document. The document lists the items being submitted to each creditor and equity security holder. The document then summarizes the status of negotiations with several of the major players in this case. The document continues by advising creditors and equity security holders that Media Central would consider two alternative proposals to its plan and the plans of the television stations. Those proposals are described in the document as follows:

"The Debtors have indicated to the program syndicators a willingness to revise the Plans in the following two respects, neither of which revisions will affect the financial projections which are a part of the Disclosure Statements:

1. *Pooling.* The Joint Committee has expressed a concern about the availability of funds for short-falls of certain of the stations during operations under the Plans. Under a pooling arrangement each of the stations (collectively 'the Affiliates') would apply their cash receipts (1) to the payment of operating costs; (2) to the payment of Plan payments; and (3) to a reasonable reserve of cash (estimated to be not more than one month's operating costs). Any excess cash of any of the Affiliates except Jackson would be paid into a pool from which those stations which were unable to meet their own operating costs and Plan payments would receive loans or advances. Operating excess cash of Media Central would be provided similarly as loans or advances.

2. *Programming Contracts.* The Plans as filed provide for payment in full of all amounts owing on assumed and expired programming contracts. Several program syndicators have indicated a desire to avoid litigating the question of claims on rejected contracts and their value, if any, and have suggested that valid claims on both assumed contracts and rejected contracts be included in the separate class for program syndicators. Some of the program syndicators have proposed to the Debtors that the total amount of the payments provided for program syndicators for assumed contracts in each of the Plans be paid to the holders of claims on both assumed and rejected contracts. Such a plan would

provide for the payment of approximately the following percentages in settlement of the total allowed claims on assumed and rejected contracts:

| Station | Percentage of Claims |
| --- | --- |
| Jackson Television, Ltd. | 75% |
| Cape Girardeau Family Television, Ltd. | 90% |
| Honolulu Family Television, Ltd. | NA |
| Columbus Family Television, Ltd. | 80% |
| Community Service Broadcasting | 74% |
| Kansas City Television, Ltd. | 55% |
| Knoxville Television, Ltd. | 73% |
| Canton 67, Ltd. | 97% |

If a majority of those program syndicators voting in favor of the Plans, either as presented or with the proposed amendments, choose this option, the Debtors will amend the Plans accordingly.

*Ballot*

The enclosed Ballot lists options for creditors and other parties in interest to complete indicating whether they prefer the Plans (1) as they are presently structured; (2) as amended to include the pooling arrangement; or (3) as amended to include both the pooling arrangement and the revision of the provision for payment to include participation by holders of claims on rejected contracts.

The Debtors request your support of their Plans as filed or with the proposed changes as outlined. Please feel free to contact the Debtors or their counsel."

The ballot sent to the creditors and equity security holders permits votes not only on the plan filed by Media Central with the court for which a disclosure statement was judicially approved, but also on possible amended plans as described in the aforementioned document. In pertinent part the ballot reads:

"[Check One Box]

___ Accepts the Plan as submitted

___ Accepts the Plan if amended to include the pooling arrangement·

___ Accepts the Plan if amended to include both the pooling arrangement and the revision for payment to include participation by holders of claims on rejected contracts

___ Rejects the Plan"

Following the mailing of ballots to certain creditors and equity security holders, a number of completed ballots were returned to the clerk's office. Media Central has filed with the court a list of those creditors and equity security holders who received the solicitation described above.

## II

### A

■ In a chapter 11 case the debtor may file a plan of reorganization with its petition commencing a voluntary case or at any time in a voluntary case or an involuntary case. 11 U.S.C.A. § 1121(a) (West 1979). If the debtor wants to propose alternative plans of reorganization, it may file more than one plan. *In re Werth*, 29 B.R. 220, 8 C.B.C.2d 480 (D.Colo.1983). A disclosure statement must be filed either with the plan or within a time fixed by the court. Rule 3016(a), *Bankruptcy Rules*.

■ Following the filing of a disclosure statement, the court is required to hold a hearing to consider the disclosure statement and objections thereto. Rule 3017(a), *Bankruptcy Rules*. At that hearing the court must determine whether the disclosure statement contains adequate information. 11 U.S.C.A. § 1125(b) (West 1979).

■ Under the terms of 11 U.S.C.A. § 1125(b), a post-petition solicitation of votes on a plan is improper unless the court has approved the written disclosure statement filed with the plan. Section 1125(b) provides:

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after no-

tice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

Once the court has approved the disclosure statement, the proponent of the plan may solicit votes on the plan by following the procedures set forth in Rule 3017(d) of the *Bankruptcy Rules.* Rule 3017(d) provides:

(d) *Transmission and Notice to Creditors and Equity Security Holders.* On approval of a disclosure statement, the debtor in possession, trustee, proponent of the plan, or clerk as ordered by the court shall mail to all creditors and equity security holders (1) the plan, or a court-approved summary of the plan; (2) the disclosure statement approved by the court; (3) notice of the time within which acceptances and rejections of such plan may be filed; (4) notice of any date fixed for the hearing on confirmation; and (5) such other information as the court may direct including any opinion of the court approving the disclosure statement or a court-approved summary of the opinion. In addition, a form of ballot conforming to Official Form No. 30 shall be mailed to creditors and equity security holders entitled to vote on the plan. In the event the opinion of the court is not transmitted or only a summary of the plan is transmitted, the opinion of the court or the plan shall be provided on request of a party in interest at the expense of the proponent of the plan. For the purposes of this subdivision, creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record at the date the order approving the disclosure statement was entered.

Official Form No. 30 is the ballot form referred to in Rule 3017(d). The form ballot permits creditors and equity security holders to either accept or reject the plan submitted to them. Because more than one plan may be sent to creditors and equity security holders for their vote, the ballot makes provision for creditors and equity security holders to express their preference among plans they have accepted. *See also* Rule 3018(c), *Bankruptcy Rules.*

The advisory committee note on Official Form No. 30 discusses the revision that can be made to the ballot form if more than one plan is disseminated to creditors and equity security holders. The note reads in relevant part:

This form may be modified as necessary to include identification of as many plans as may have been transmitted on which a vote will be taken.

\*      \*      \*      \*      \*      \*

Before the form is transmitted, the blanks identifying the plan and the name and address of the person to whom it should be returned should be completed for the information of creditors and equity security holders.

In the instant case only one plan was filed by Media Central. Although the plan was amended prior to a final hearing on the disclosure statement, the plan as amended was the only plan filed by the debtor and the only plan for which a disclosure statement was approved. If Media Central had filed alternative plans, it would have been required by Rule 3016(a) of the *Bankruptcy Rules* to file disclosure statements for those plans; or, it could have filed a joint disclosure statement disclosing information about the alternative plans. *See In re Werth,* 29 B.R. at 222, 8 C.B.C.2d at 482–83.

■ Instead, Media Central solicited votes not only on the plan that was filed, but also on two alternative plans that were not filed. The information about the two alternative plans contained in the previously described solicitation document is the type of information one would expect to see in a disclosure statement accompanying the two alternative plans. This solicitation document was not, however, a disclosure statement approved by the court. Because Media Central solicited votes on unfiled, alternative plans without approved disclosure statements, it violated the provisions of 11 U.S.C.A. § 1125(b).

After hearing the representations of Media Central's counsel at the hearing on this matter, the court is satisfied that counsel did not willfully or consciously attempt to circumvent the procedures relating to vote solicitation on a plan. Rather, counsel apparently attempted to cut down on administrative expenses by accomplishing in one mailing two objectives—(1) the solicitation of votes on Media Central's present plan, and (2) the determinacy of creditor interest on possible plan alternatives.

Although negotiations with creditors and equity security holders is an integral part of a chapter 11 case, such negotiations cannot be accomplished through solicitation of votes on unfiled plans having no court-approved disclosure statements.[2] Naturally, efforts to keep administrative expenses to a minimum should be encouraged; however, such efforts must be undertaken within the confines of mandated procedures.

When votes on a plan have not been solicited in accordance with the provisions of title 11, the court may disallow such votes after notice and a hearing. 11 U.S.C.A. § 1126(e) (West 1979). As previously noted, counsel for Media Central announced that the debtor did not intend to rely on any of the votes heretofore cast because Media Central and the stations planned to file amended plans and disclosure statements. Apparently, the debtor believes that the amended plans and disclosure statements will necessitate a completely new solicitation. Consequently,

debtor's counsel had no objection to Donatelli & Kline's request that all of the votes received from the initial solicitation be disallowed.

There still remains the question of attorney fees and expenses. Donatelli & Kline argued in their motion that the court should deny debtor's counsel attorney's fees and expenses incurred in connection with the initial vote solicitation. Because Media Central plans to file an amended plan and disclosure statement, the court is unable to tell at this time whether the votes heretofore received would be usable in this case but for the defective solicitation. *See* 11 U.S.C.A. § 1127(c) and (d) (West 1979). As in all cases, the court must eventually determine whether professional fees and expenses incurred in representing a debtor were necessary, actual, and reasonable. 11 U.S.C.A. § 330(a) (West Supp.1988). The court will await further developments in this case before deciding whether to allow fees and expenses incurred in the initial solicitation of votes on Media Central's plan.

## B

■ Before concluding, the court will comment briefly on the second matter raised by Donatelli & Kline's motion; namely, the propriety of sending creditors and equity security holders information about the debtor and debtor's progress in plan negotiations that was not included in

2. The importance of distinguishing between vote solicitation and negotiation was demonstrated in *In re Snyder*, 51 B.R. 432 (Bankr.D. Utah 1985). An attorney representing a plan proponent may run afoul of the Code of Professional Responsibility if the attorney contacts directly a party in interest whom he knows is represented by counsel without the prior consent of the lawyer representing such other party or without being authorized by law to make direct contact in absence of notification. *See* Rule 8, DR 7–104, *Rules of the Supreme Court of the State of Tennessee.* The court in *Snyder* held that communication with creditors regarding a proposed plan of reorganization is analogous to communicating with an adverse party regarding settlement; in each case, the ethical canons require prior consent from the creditor's attorney, if such creditor is represented by an

attorney. *In re Snyder*, 51 B.R. at 438–39. The court went on to point out in a footnote that its holding does not require the debtor's attorney to obtain permission from attorneys representing creditors in order to disseminate an approved disclosure statement, a plan of reorganization, or ballots for acceptance or rejection thereof, because these are communications "authorized by law." *In re Snyder*, 51 B.R. at 439, n. 11. Even though the contact with creditors and equity security holders in the instant case was intended to be a vote solicitation under the Code, the solicitation was not proper with respect to the unfiled plans and was more akin to pre-plan negotiation. However, because no evidence was presented on the issue of improper contact with represented parties in this case, the court need not decide whether the *Snyder* situation was present here.

the court-approved disclosure statement.[3]

Recently, the district court in *First American Bank of New York v. Century Glove*, 81 B.R. 274 (D.Del.1988) held that § 1125(b) does not limit solicitation materials to the contents of the plan, the disclosure statement, and any other court-approved material. *Contra, In re Temple Retirement Community*, 80 B.R. 367 (Bankr.W.D.Tex.1987). As long as a disclosure statement has been approved by the court, additional solicitation materials that have not been court-approved may be sent to creditors and equity security holders. The district court reasoned that § 1125 contemplates creditors and equity security holders being able to obtain information about the debtor's affairs through sources other than the court-approved disclosure statement. The additional solicitation material is but one additional source in which information can be imparted to the creditors and equity security holders.

Although the reasoning of *Century Glove* appears sound, pitfalls may still await those parties who solicit votes on the basis of information not contained in a court-approved disclosure statement. The disclosure statement hearing gives interested parties the opportunity to challenge whether certain statments or information contained in the disclosure statement should be sent out to those who will vote on a plan. Failure to obtain beforehand a judicial ruling on the propriety of statements or information sent in conjunction with a vote solicitation may lead to a vote disqualification after the fact if it is later determined that the statements or information were improper and the solicitation in bad faith. Even the court in *Century*

*Glove* recognized that a party can ensure that its solicitation efforts are appropriate by seeking an affirmative finding from the bankruptcy court regarding the disclosure required and the lobbying permitted. *First American Bank of New York v. Century Glove*, 81 B.R. at 279.

According to debtor's attorney, the additional information sent to creditors and equity security holders in the instant case was not available until after the court approved the debtor's disclosure statement. Hence, additional expense and delay would have ensued had the debtor sought court approval of yet another disclosure.[4]

Since Media Central apparently plans to file another amended disclosure statement in this case, it will have the opportunity to obtain court approval of any additional information it wishes to send out to creditors and equity security holders. Although the court will not require that all solicitation material be court-approved, the debtor can avoid potential problems by incorporating into its disclosure statement such additional information it intends to disseminate to creditors and equity security holders in connection with its vote solicitation.

An order will enter in accordance with this memorandum.

**3.** In their motion, Donatelli & Kline challenged the accuracy of some of the representations made by the debtor about negotiations with other creditors. This issue was not pursued once debtor's counsel announced that the debtor would not rely on any votes heretofore cast. No proof on the issue was offered at the hearing and the court made no findings relative thereto.

Donatelli & Kline also complained in its motion that the debtor should not have sent out an unfiled solicitation document which looked like a pleading-type document filed with the court. Although this argument likewise was not pur-

sued at the hearing, the court does believe that in the interest of avoiding possible confusion in the future, the debtor should not send out an unfiled solicitation document which is not court-approved with the language "In the United States Bankruptcy Court for the Eastern District of Tennessee, Southern Division" typed at the top of the document.

**4.** Unfortunately, any time and expense saved by foregoing court approval of additional solicitation materials can be short-lived if the solicitation materials are later challenged.